UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATTHEW J. MCGINNESS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 4:22-cv-00085-SEP |
| ) | |
| CAPTAIN ORVILLE LESTER, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court are two separate amended complaints filed by Plaintiff Matthew J. McGinness. Docs. [26], [31]. For the reasons set forth below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**LEGAL STANDARD ON INITIAL REVIEW**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015)

(quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.2004)). However, even pro se complaints are required to "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### BACKGROUND

Plaintiff is a self-represented litigant currently incarcerated at the Northeast Correctional Center in Bowling Green, Missouri. On January 21, 2022, he filed a civil action pursuant to 42 U.S.C. § 1983, naming Captain Orville Lester, Nurse Jamie Unknown, H. Deutsch, Chris Cox, T. Misuraco, G. Tipton, and Sheriff Rick Harrell as Defendants. Doc. [1]. All Defendants are sued in both individual and official capacities. At the time of filing, Plaintiff was a detainee at the Lincoln County Jail in Troy, Missouri.

The complaint contained allegations regarding Plaintiff's medications, the Lincoln County Jail's COVID-19 protocols, and the nonpayment of sales taxes. His central allegation, however, was that he was prescribed amitriptyline, which is the generic form of Elavil, but that a "nurse told [him] that [he] would have to get a different medication because she had exceeded her budget for the year." *Id*. at 3-4. At the time, Plaintiff alleged that he had been without the medication for two weeks, though he did not explain why he needed the prescription. He noted that he was eventually able to pay for the medication. *Id*. at 4.

For relief, Plaintiff sought $79.67 in actual damages and $10,000 in punitive damages. *Id*. at 5. He also asked that "Federal Marshals assume control of the jail until a point that the county employees are able to do so without violating the constitution." *Id*.

On February 22, 2022, Plaintiff filed a "Request for Summary Judgment," which the Court construed as a motion for summary judgment. Doc. [4]. In the motion, Plaintiff repeated the allegations in his complaint and added certain clarifying facts. Specifically, he alleged that he was prescribed Elavil on October 14, 2021, but "the nurse advised that the prescription would not be filled until the inmate account had funds available to pay for it," and "the prescription was not filled until" November 16, 2021, when Plaintiff had funds in his inmate account. *Id*.

Along with his motion for summary judgment, Plaintiff filed a "Request for Injunctive Relief," which the Court construed as a motion for injunctive relief.  Doc [5].  In the motion, he complained that he was being held on $150,000 cash bond, and that the amount had not changed during the four months he had been incarcerated.

On March 2, 2022, Plaintiff filed a document titled "Amendment to Civil Rights Complaint."  Doc. [7].  In the document, Plaintiff sought leave to amend his complaint to raise his actual damages "by $40,000.00" because his motorcycle—which had been impounded upon his arrest—had been sold by the towing company.

On the same day he asked to amend his complaint, Plaintiff submitted a "Brief in Support of Request for Summary Judgment."  Doc. [8].  In the brief, he repeated his claim that he was prescribed medication by a doctor but had to wait a month to receive it.  The majority of the brief, however, was devoted to Plaintiff's argument about excessive bond, which had not been raised in his summary judgment motion.

Along with his amendment request and brief, Plaintiff also filed a second "Request for Injunctive Relief."  Doc. [9].  In this document Plaintiff complained about the progress of his criminal case, including the lack of laboratory analysis of the substance he allegedly delivered and the excessiveness of his bond.  Plaintiff also asserted that, after reading the relevant statute, he was "convinced that [he was] in no way guilty of the charge."  He thus asked the Court to relieve him of his bond and release him from custody.

On March 17, 2022, Plaintiff sent a letter to the Court containing new allegations regarding his confinement.  Doc. [11].  Specifically, Plaintiff noted that there had been "two overdose deaths" at the Lincoln County Jail, along with "a number of non-lethal overdoses."  Based on rumors, he speculated that correctional staff were "somehow involved" with drugs getting into the jail.  Because of this, Plaintiff stated that he did not "feel particularly safe."  In addition, he claimed that he posed "no threat to the community."  As such, Plaintiff renewed his request for the Court to "get involved with [his] criminal case."

On April 21, 2022, Plaintiff submitted a document titled "[Evidentiary] Affidavit," in which he sought "to add issues" to his complaint.  Doc. [12].  He complained therein that his "file remained inactive" for three months due to "infighting between the Clerk[']s Office and Judge Flynn."  *Id*. at 2.  On June 8, 2022, Plaintiff moved to voluntarily dismiss his case.  Doc. [13].  On June 17, 2022, he moved to withdraw his request to dismiss.  Doc. [14].

3

On June 28, 2022, Plaintiff submitted a document titled "Affidavit in Support of Civil Rights Complaint." Doc. [15]. In that document, he asked "to be able to address the issue of food," and went on to complain that he was not receiving dairy or fruit. *Id*. at 3. He further complained that the food was provided by a contractor, and that it was not nutritional. *Id*.

On August 25, 2022, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis* and assessed an initial partial filing fee. Doc. [20]. Because he was proceeding *in forma pauperis*, the Court reviewed his complaint under 28 U.S.C. § 1915. Based on that review, the Court determined that his complaint was subject to dismissal. Among other things, the Court noted that Plaintiff had improperly attempted to join unrelated claims, he had not adequately pleaded municipal liability to support his official capacity claims, and he had not demonstrated that Defendants had been deliberately indifferent to his medical needs.

Rather than dismissing outright, the Court ordered Plaintiff to file an amended complaint, sent him a form on which to do so, and provided instructions on how to properly amend. He was given 30 days to comply and was advised that the filing of an amended complaint would completely replace the original complaint. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

On September 19, 2022, Plaintiff filed a motion for an extension of time in which to submit his amended complaint. Doc. [24]. The Court granted the motion on September 20, 2022. Doc. [25].

The Court received an amended complaint from Plaintiff on September 26, 2022. Doc. [26]. A month thereafter, on October 20, 2022, Plaintiff filed another motion for an extension of time in which to submit an amended complaint. Doc. [27]. The Court denied the motion as moot, as Plaintiff's amended complaint had already been received. Doc. [28]. On November 22, 2022, however, Plaintiff submitted a second amended complaint. Doc. [31]. Plaintiff did not explain why he submitted two separate amended complaints or indicate which amended complaint he wants to be treated as the operative pleading.

## FIRST AMENDED COMPLAINT

The first amended complaint is on a Court-provided 42 U.S.C. § 1983 form. Doc. [26]. It names Captain Orville Lester of the Lincoln County Jail and Lincoln County Commissioner Joseph Kaimann as Defendants. *Id*. at 2-3. Both are sued in their official and individual capacities.

4

In the "Statement of Claim," Plaintiff asserts that he was a pretrial detainee at the Lincoln County Jail from October to August. Doc. [26] at 3. He states that, during that time, he "was sustained by the meals served there," but that he was not "served any fruit." *Id*. at 3. After five or six months, Plaintiff claims he began having dental problems, including infections, toothaches, and abscesses. *Id*. He acknowledges that he received "treatment for [his] tooth infections," but asserts that the problems were caused by not having fruit in his diet. *Id*. at 4.

Additionally, Plaintiff complains of a lack of dairy in his diet, and alleges that it caused an "erosion of bone density." *Id*. More particularly, he states that he has "several metal implants in [his] body as a result of [prior] bone fractures" and that during his incarceration, several screws and pins securing these implants "began to come loose." *Id*. He explains that he has had these implants for ten years, and that "only after being on the diet served at the Lincoln County Jail [has he] had any problems with them." *Id*.

Plaintiff alleges that "[t]he Commissioner for Lincoln County is responsible for contracting the food service provider in the jail," and "[t]he captain at the jail is responsible for [receiving] and [rectifying] the issues presented in grievances. *Id*.

Plaintiff is seeking $10,000 in damages for injuries allegedly caused by his diet. *Id*. at 5.

## SECOND AMENDED COMPLAINT

The second amended complaint is also on a Court-provided 42 U.S.C. § 1983 form. Doc. [31]. It names Police Officer Jon Alfaro, Captain Orville Lester, Judge Gregory Allsberry, Circuit Court Clerk Karla Allsberry, Sheriff Rick Harrel, Nurse Jamie Unknown, and Judge Ash as Defendants. *Id*. at 1. Officer Alfaro and Captain Lester are sued in both their official and individual capacities. *Id*. at 2-3. Plaintiff does not indicate the capacity in which the remaining Defendants are sued. *Id*. at 4-6. Despite the Court's earlier warning to avoid improper joinder, the second amended complaint contains a number of unrelated claims.

In the "Statement of Claim," Plaintiff asserts that from October 2, 2022, to September 7, 2022, "employees of Troy Police, Lincoln County Jail, Lincoln County elected officials, and an unknown contractor providing medical care to residents of the Lincoln County [Jail] repeatedly violated" his civil rights under the Constitution. *Id*. at 3.

With regard to Officer Alfaro, Plaintiff states that Alfaro arrested him "on private property" and that he "was not charged with any traffic offenses." *Id*. at 4. He further notes that

5

Officer Alfaro impounded his motorcycle, and that the impound lot later sold it. *Id*. After the sale, Plaintiff's charges were dismissed. *Id*.

Plaintiff alleges that Judge Allsberry set his bond at $150,000 cash, and that the bond remained at that level for over nine months. *Id*. He claims that Judge Allsberry had him waive his preliminary hearing and his right to counsel, leaving his rights "unprotected for over 8 months." *Id*. After "being assigned a judge and a lawyer[,] the charges were dismissed." *Id*.

Plaintiff accuses Court Clerk Allsberry of holding his "case inactive for three months" while it "moved from one judge to another." *Id*. According to Plaintiff, Allsberry did not assign his case to Judge Flynn until he moved for final disposition and dismissal. He states that he was "told the clerk claimed to have lost [his] file," but he "find[s] this impossible to believe." *Id*.

As to Sheriff Harrel and Captain Lester, Plaintiff observes that it is hard "to say exactly who was responsible for the civil rights violations in the Lincoln County Jail," and he blames them jointly for the conditions of the jail during the Covid pandemic. *Id*. at 5. Plaintiff states that he was placed into custody without medical screening, Covid testing, quarantining, vaccination, or temperature screening. *Id*. He contends that the pandemic was "completely ignored," explaining that he "was assigned a bunk above a man suffering from C.O.P.D. who was 62 years" old, and who used three inhalers plus medication for his condition. *Id*. Plaintiff believes that if he "had inadvertently infected" the man, "it would likely have killed him." *Id*. He also states that several other detainees were infected with Covid-19 and that at least one individual died "after becoming infected in the jail." *Id*.

As to Nurse Jamie Unknown, Plaintiff states that he saw "a doctor at the Lincoln County Jail who prescribed [him] a medication" that he has taken for many years, and Nurse Jamie "refused to fill the prescription until the funds became available in [his] inmate account to pay for" it. *Id*. at 6. As a result, he went without this medication "for several weeks." *Id*.

Finally, Plaintiff asserts that Judge Ash ignored his pro se motion for final disposition and later denied his motion to dismiss. *Id*. at 7. Judge Ash allegedly released him from custody but refused to grant Plaintiff's motion, "stating that the prosecution would refile." *Id*.

Based on the above, Plaintiff claims that he was held in custody for 11 months for a crime he did not commit, that his bond was excessive, and that he became ill with Covid-19 symptoms "but was denied testing or treatment." *Id*. at 7. He seeks $40,000 from the sale of his motorcycle, $1,000 a week in wages, and $100,000 in punitive damages. *Id*. at 8.

6

**DISCUSSION**

After the Court directed Plaintiff to file an amended complaint, he filed two separate amended complaints, both with this case number, but he did not indicate why he filed two or which one he wants treated as the operative pleading. Because Plaintiff is proceeding *in forma pauperis*, the Court reviewed both amended complaints under 28 U.S.C. § 1915. Because neither states a claim, the Court will dismiss this action without prejudice.

**I.      First Amended Complaint**

In his first amended complaint, Plaintiff sues Captain Lester and Lincoln County Commissioner Kaimann in both their official and individual capacities, alleging that he received no fruit or dairy in his meals.

**A. Official Capacity Claims Against Lester and Kaimann**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (official capacity suit against sheriff and his deputy "must be treated as a suit against the County"). Here, both Captain Lester and Commissioner Kaimann are alleged to be employed by Lincoln County. As such, the official capacity claims against them are treated as being made against the county itself.

A local governing body such as Lincoln County may be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which Plaintiff can assert the liability of Lincoln County.

First, Plaintiff can plead the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal

7

official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, Plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, Plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, Plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom.  *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).  However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists.  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).  In this case, Plaintiff has not presented sufficient factual allegations to support the proposition that Lincoln County harmed him due to an unconstitutional policy or custom or a deliberately indifferent failure to train or supervise.

Plaintiff does not point to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Lincoln County's] governing body" at issue in this case.  He alleges no facts implying that the allegedly deficient meals served at the jail were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  Plaintiff provides no facts suggesting that county policymakers decided that meals should not have fruit or dairy.  Rather, as Plaintiff himself notes, the jail apparently contracted with an outside vendor to provide meals to inmates.  Nothing suggests that Lincoln County was the moving force behind any constitutional violation.

Plaintiff also has not alleged the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Lincoln County employees, nor that county policymakers have been deliberately indifferent to such misconduct.  Plaintiff's conclusory "Statement of Claim" does not establish that a county employee violated his constitutional rights, or that there has been a pattern of similar constitutional violations that should have put the county on notice.  Likewise, Plaintiff has not demonstrated a deliberately indifferent failure to train or supervise, which requires allegations showing Lincoln County had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.

Finally, to the extent Plaintiff seeks to hold Lincoln County liable simply for employing Captain Lester and Commissioner Kaimann, a municipality cannot be held liable under 42 U.S.C. § 1983 based on respondeat superior.  *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality . . . cannot be liable on a respondeat superior theory."); *Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior.").

For all these reasons, Plaintiff has failed to state a claim against Lincoln County and the official capacity claims against Defendants Lester and Kaimann are dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where Plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of Plaintiff's rights).

**B.  Individual Capacity Claims Against Lester and Kaimann**

Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In his "Statement of Claim," Plaintiff states that from October to August, he was served meals that did not include fruit or dairy. According to him, this caused dental problems and loss of bone density. Plaintiff has a right to a nutritionally adequate diet. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). Nevertheless, to state a 42 U.S.C. § 1983 claim, he must establish that Defendants Lester and Kaimann were personally responsible for violating that right. He has not done that. He presents no facts establishing that either Defendant knew the contents of the meals being served by the contractor, knew that those meals were nutritionally deficient, or knew that Plaintiff was suffering ill effects from these meals. Plaintiff alludes to grievances being made, but he does not allege the substance of these grievances or that they actually reached Defendants.

Rather than present such facts, Plaintiff relies on Defendants' positions of authority, saying they are "responsible." But vicarious liability is not available in § 1983 actions. *See Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) ("a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement"). Plaintiff's brief statement regarding Defendants' general responsibility is insufficient to show direct participation or to forge the requisite "causal connection" between Defendants' actions and any deprivation of Plaintiff's rights. Thus, Plaintiff has failed to state individual capacity claims against Defendants Lester and Kaimann.

## II.  Second Amended Complaint

In the second amended complaint Plaintiff submitted to the Court, he asserts various, disconnected causes of action against Officer Alfaro, Captain Lester, Judge Allsberry, Court Clerk Allsberry, Sheriff Harrel, Nurse Jamie, and Judge Ash.  Officer Alfaro and Captain Lester are sued in their official and individual capacities.  Plaintiff does not indicate the capacity in which the remaining Defendants are sued, so the Court treats them as being sued in their official capacities only.  *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims.").

### A.  Official Capacity Claims Against Lester, Allsberry and Hazel

Defendants Lester, Court Clerk Allsberry, and Sheriff Harrel are employees of Lincoln County.  Thus, the official capacity claims against them are actually claims against the county itself, their employer.  *See White*, 865 F.3d at 1075.  As explained above, to state a claim against Lincoln County, Plaintiff must demonstrate that the county was liable due to "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *See Mick*, 883 F.3d at 1079.

With regard to the Lincoln County Jail's handling of Covid-19, Plaintiff has presented no facts supporting the proposition that the county had an unconstitutional policy.  He points to no "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters" as violating his rights.  *See Corwin*, 829 F.3d at 700.  Nor does Plaintiff allege "a continuing, widespread, persistent pattern of unconstitutional misconduct by" Lincoln County employees, or that policymaking officials were deliberately aware of or tacitly authorized such misconduct.  *See Johnson*, 725 F.3d at 828.  Likewise, there are no allegations suggesting that Lincoln County was deliberately indifferent in training or supervising its employees.  *See S.M.*, 874 F.3d at 585.  Similarly, as to Plaintiff's allegations regarding his case being "inactive" for three months, there is absolutely no indication that this resulted from a policy, custom, or failure to train on the part of Lincoln County.  Thus, Plaintiff has failed to state official capacity claims against Defendants Lester, Allsberry, and Harrel.

### B.  Official Capacity Claim Against Officer Alfaro

According to Plaintiff, Officer Alfaro is an employee of the City of Troy.  The official capacity claim against him is therefore against Troy as his employer.  Plaintiff does not allege

11

that Officer Alfaro's arrest of Plaintiff was due to an unconstitutional policy, custom, or failure to train on the part of the City of Troy. And the Court cannot infer the existence of a policy or custom from a single incident, which is all that Plaintiff has alleged. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991). Therefore, Plaintiff has failed to state an official capacity claim against Officer Alfaro.

### C. Official Capacity Claim Against Nurse Jamie

It is unclear whether Nurse Jamie is employed by Lincoln County or by an outside contractor. Either way, there are no facts to support a claim against her employer. To the extent Nurse Jamie is employed by Lincoln County, Plaintiff has presented no facts that her handling of his prescription was done pursuant to an official policy, an unofficial custom, or resulted from a deliberately indifferent failure to train or supervise. *See Mick*, 883 F.3d at 1079. To the extent Nurse Jamie is employed by a private company acting under color of state law, Plaintiff has not alleged the existence of "a policy, custom, or official action that inflicted an actionable injury." *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). For these reasons, Plaintiff has failed to state an official capacity claim against Nurse Jamie.

### D. Official Capacity Claims Against Judge Allsberry and Judge Ash

Plaintiff asserts that Judge Allsberry and Judge Ash are state judges, meaning that any official capacity claims against them would be treated as being made against the State of Missouri. Such claims are not cognizable under 42 U.S.C. § 1983. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, "[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).

In this case, Plaintiff is seeking monetary damages, but he cannot recover such damages from the State of Missouri, because it is not a 42 U.S.C. § 1983 "person," and because the claim is barred by sovereign immunity. Therefore, the official capacity claims against Judge Allsberry and Judge Ash must be dismissed.

### E. Individual Capacity Claim Against Officer Alfaro

Plaintiff sues Officer Alfaro in an individual capacity, alleging that Alfaro arrested him on "private property," that he "was not charged with any traffic offences," and that Alfaro impounded Plaintiff's motorcycle, which "the impound lot later sold."

Pursuant to "the Fourth Amendment, a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson, Mo.*, 897 F.3d 916, 920 (8th Cir. 2018). "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). But a false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). In this case, Plaintiff provides no facts to establish that Officer Alfaro violated his rights under the Fourth Amendment. Specifically, he does not allege that Officer Alfaro lacked probable cause to make an arrest, which is necessary to state a claim under 42 U.S.C. § 1983.

In order to support a claim that Officer Alfaro unconstitutionally deprived him of his property, Plaintiff must demonstrate that there is no meaningful post-deprivation remedy. *See Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) ("When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Missouri provides such a remedy. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990). An individual claiming the right to possession of personal property may bring an action in replevin. Mo. R. Civ. P. 99.01. *See also Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under Missouri law). Thus, Plaintiff has not stated an individual capacity claim against Officer Alfaro.

### F. Individual Capacity Claim Against Captain Lester

Plaintiff sues Captain Lester in an individual capacity due to the Lincoln County Jail's handling of the Covid-19 pandemic. He states that he was taken into custody during the "middle" of the pandemic, that he was not tested, did not have his temperature taken, was not

13

quarantined, and was not given a vaccine. Plaintiff also asserts that "several pretrial detainees in the jail were infected with the virus."

Such allegations cannot establish Captain Lester's personal responsibility for a constitutional violation, as none of them connects Captain Lester to the challenged actions. *See S.M.*, 808 F.3d at 340 ("Government officials are personally liable only for their own misconduct."). Instead, Plaintiff appears to rely on Captain Lester's position at the jail to assert liability. As previously discussed, that is not sufficient for purposes of 42 U.S.C. § 1983. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). Rather, Plaintiff must show that Captain Lester's own actions violated Plaintiff's rights. *See Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). Plaintiff has not done so, and thus has failed to state an individual capacity claim against Captain Lester.

### G. Individual Capacity Claims Against Judge Allsberry, Judge Ash, Court Clerk Allsberry, Sheriff Harrel, and Nurse Jamie Unknown

Plaintiff has not indicated the capacity in which he intends to sue Defendants Judge Allsberry, Judge Ash, Court Clerk Allsberry, Sheriff Harrel, and Nurse Jamie Unknown. Therefore, they are considered to be sued in their official capacity only. *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). As discussed above, Plaintiff has not adequately stated official capacity claims against these Defendants. Even if he had named them in their individual capacities, however, the claims would still be subject to dismissal.

#### 1. *Judge Allsberry and Judge Ash*

Plaintiff accuses Judge Allsberry of setting an excessive bond, and of having him waive his preliminary hearing and right to counsel. And he complains that Judge Ash did not grant his motion to dismiss. Such claims are barred by judicial immunity.

In order to allow judges to exercise the authority with which they are vested, judicial immunity provides them with immunity from suit. *See Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity applies even when the judge is accused of acting maliciously or

14

corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967); s*ee also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) ("judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from a 42 U.S.C. § 1983 action bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462.

In this case, neither of the two narrow exceptions applies. First, Plaintiff complains of actions taken by Judge Allsberry and Judge Ash in their judicial capacities, to wit: setting Plaintiff's bond and refusing to grant a motion. Neither can be said to be non-judicial. Second, there is no indication that either judge acted in the complete absence of jurisdiction. Therefore, even if Plaintiff had sued Judge Allsberry and Judge Ash in their individual capacities, the claims would be barred by judicial immunity.

### 2. Court Clerk Allsberry

Plaintiff asserts that Court Clerk Allsberry "held [his] case inactive for three months" before moving it to Judge Flynn's docket. He does not explain what he means by "held," and fails to connect her actions to a violation of his constitutional rights. Thus, there are no facts to support a plausible claim for relief. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief."). Even if Plaintiff had sued Court Clerk Allsberry in her individual capacity, the claim would be subject to dismissal.

### 3. Sheriff Harrel

Plaintiff alleges that Sheriff Harrel shares responsibility with Captain Lester for the Lincoln County Jail's handling of Covid-19. As explained above, Plaintiff has failed to establish Captain Lester's personal responsibility for any constitutional violation. The same is true of Sheriff Harrel. There is no indication that Sheriff Harrel did anything to violate Plaintiff's

constitutional rights. Therefore, even if Plaintiff had sued Sheriff Harrel in his individual capacity, the claim would be subject to dismissal.

### 4. Nurse Jamie Unknown

Plaintiff states that a doctor at the Lincoln County Jail prescribed him "a medication." He does not name the medication, but prior filings suggest that it was amitriptyline. According to Plaintiff, he had taken the medication for many years, but Nurse Jamie refused to fill the prescription until he had funds available to pay for it, which left him "without the medication for several weeks."

At all relevant times, Plaintiff was a pretrial detainee, meaning his constitutional claims arise under the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). The Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, an inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

To establish deliberate indifference, a plaintiff must show that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021). In other words, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017); *see also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018)

("plaintiff must establish a mental state akin to criminal recklessness:  disregarding a known risk to the arrestee's health").

Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication.  *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995); *see also Davis v. Buchanan County, Missouri*, 11 F.4th 604, 624 (8th Cir. 2021).  But a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence.  *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

In this case, Plaintiff has presented no allegations regarding either prong of the deliberate indifference standard.  While he states that he went without a medication for "several weeks," he does not explain what the medication was for, much less that it constituted a serious medical need.  Accordingly, the allegations do not support an inference that Nurse Jamie's withholding of the medication until Plaintiff could pay for it constituted "intentional maltreatment or a refusal to provide essential care."  The Court notes that it specifically advised Plaintiff of this deficiency in its order to amend, observing that while the failure to administer medication can constitute deliberate indifference, Plaintiff had not presented facts regarding a serious medical need, or that his need had been disregarded.  Rather than offering additional allegations, Plaintiff has simply repeated his earlier deficient claim.  Therefore, even if Plaintiff had sued Nurse Jamie Unknown in an individual capacity, the claim would be subject to dismissal.

### III.    Pre-Service Dismissal

After the Court determined that Plaintiff's original complaint was subject to dismissal, it ordered him to file an amended complaint, and provided instructions on how to amend.  Plaintiff responded by submitting two separate amended complaints.  Despite the Court's admonition about improper joinder, the two amended complaints contained a variety of unrelated claims.  In addition, notwithstanding the Court's prior instructions, Plaintiff still fails to allege that any of the Defendants was personally responsible for violating his rights, or that any governmental entity employing a Defendant was the moving force behind a constitutional violation.  Having already given Plaintiff the opportunity to amend, the Court will now dismiss this action without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).  A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 22nd day of May, 2023.

                                                                       _____
                                                                       SARAH E. PITLYK
                                                                       UNITED STATES DISTRICT JUDGE